OPINION
In this case, Bertha Henderson appeals from a judgment awarding her $300 in damages on a claim of failure to replace a roof in a workmanlike manner. Henderson's single assignment of error alleges that the damage award was against the manifest weight of the evidence.
The standard for manifest weight challenges, taken from the criminal context, is that:
 "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting from State v. Martin (1983), 20 Ohio App.3d 172, 175. We have previously stressed that despite this heightened review power, "we will not disturb the choice made by the trier of fact between credible witnesses and their conflicting testimony unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97 CA 110, unreported, 1998 WL 241823, p. 3.
In the present case, a default judgment was rendered on liability, and a bench trial was then held on the subject of damages. According to the evidence, Ms. Henderson contacted Fillinger in 1994, about replacing her roof. The previous roof was installed 20 years earlier, and had begun to leak. At the time, Fillinger had been in the roofing business for many years. He testified that he installed a new roof according to manufacturer's specifications, in the same way that he does all roofs.
About a month after the roof was replaced, Henderson called Fillinger and said that water was coming in around the chimneys. As a result, Fillinger came to the house and completely redid the chimney work. Henderson then called a month or two later, after another hard rain, and said the roof was leaking again. This time, Fillinger placed a solar seal about an inch and a half around the flashing on the chimney and embedded it into the block, to seal any potential cracks. Solar seal is an adhesive base caulking that is used in areas where water can be a problem.
Several months later, Henderson contacted Fillinger once more to complain about leaks in the roof. At that point, Fillinger told Henderson that he had done everything he was contracted to do, and had done the work properly. Consequently, Fillinger told Henderson to have other contractors inspect the roof. He also said if the other contractors found something wrong or found a way to remedy the problem, he would take care of it.
Subsequently, Fillinger was contacted by some contractors who had seen the roof. After these discussions, Fillinger told Henderson to seal in the chimneys. Sealing is a clear coating that goes over the vertical joints and actually seals the chimney itself so that no water can get behind the casings. Fillinger told Henderson that if the sealing took care of the problem, he would not pay for it, since it was not part of the original work that was contracted. He also said that if this did not fix the problem, he would pay for the sealing process.
Ultimately, Henderson had the roof repaired in 1999, by another roofing contractor (John Grover), at a cost of $1,650. At trial, Henderson presented testimony from Grover and from Steven Sullivan, who inspected the roof in December, 1998. Sullivan was not associated with Grover and did not take part in any roof repairs. Instead, he was simply a consultant who was retained to look at the roof. Sullivan testified that the roof leaked because it did not have a cricket installed. A cricket, or damn, diverts water around the chimney instead of allowing the water to pool behind the chimney. Sullivan also testified that the flashing was installed up the back of the chimney about six or eight inches, and was sawed (or cut) into a mortar joint.
In contrast, Grover testified that the leaks were caused by improper installation of roof flashing or counter flashing on the chimney around the roof. Specifically, the counter flashing on the chimney had not been cut into and set in the mortar joints. Consequently, Grover repaired the roof and replaced the flashing and counter flashing on the chimneys. He also sealed the chimneys as a preventive measure. The roof did not leak after Grover finished the repairs.
Grover indicated that he charged $600 to $700 each to flash two chimneys, and $65 to seal each chimney. However, Grover refused to state that his charges were an industry standard. Instead, he testified that this was simply "his price," which might be more or less than the industry standard.
In contrast, Fillinger testified that Grover's charge was excessive, and that the standard rate to counter flash a chimney is about $175. Fillinger indicated that the total price for both chimneys should have been about $300. He also stated that he sat in his truck and watched the work done by Grover's company. Grover's company did nothing other than put flashing back on the chimney the same way it had been installed in the first place. They also sealed the chimneys, which is what stopped the leak and is what Fillinger had recommended as the next step in solving the problem.
Some evidence was also presented about interior damage that resulted from the leak, and which would have cost about $800 or $900 to repair. However, Henderson essentially admitted that the damage was pre-existing (or at the least, was unable to offer clear proof about the subject).
After hearing the above evidence, the judge noted that differing opinions on the cost of repair had been presented. Because the judge found the evidence and credibility factors evenly balanced, he awarded $300 for the repair of the roof. He did not award any amount for interior damage, and this part of the judgment has not been appealed.
Henderson contends that the judge's decision was against the manifest weight of the evidence because it was based on the "self-serving" statement of the defendant about what the repair cost should be. According to Henderson, the defendant's evidence was unsupported and suspect, and should not be believed.
"Where a contractor fails to perform in a workmanlike manner, the cost of repairing the deficient work is the proper measure of damages." McCray v. Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521, 523. Henderson had the burden of proving these damages by a preponderance of the evidence. Capital Equipment Enterprises, Inc. v. Wilson Concepts, Inc. (1984), 19 Ohio App.3d 233, 234. Although both sides presented testimony about the cost of repair work, the trial court apparently chose to believe the defendant, since the defendant's version of damages equaled the amount awarded. Henderson contends that Fillinger's testimony was not credible, but the trial court felt otherwise. We have said on many occasions that we will defer to the trial court's credibility determinations. See, e.g. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 278. Further, while the trial judges's comments might have been clearer, we think what he meant is that Henderson did not sustain the burden of proving that her damages amounted to $1,650. We agree with this conclusion.
Based on the preceding discussion, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
WOLFF, P.J., and FAIN, J., concur.